LORENZO DÁVILA, Plaintiff and Appellee, *v.* ANTONIO SOTO-MAYOR and GERÓNIMA PIZARRO, Defendants.—PIZARRO, Appellant.

No. 3723.   Argued November 6, 1925.—Decided July 19, 1926.

*Vicente Zayas Pizarro* for the appellant. *Charles Brunet del Valle* and *Erasto Arjona Siaca* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On the 18th of February, 1925, Lorenzo Dávila brought an action of unlawful detainer against Antonio Sotomayor and Gerónima Pizarro. He alleged in his complaint that he was the owner of a property possessed by the defendants who paid no rent.

The plaintiff could summon only defendant Pizarro because of the death of defendant Sotomayor.

Defendant Pizarro answered by denying the allegations

of the complaint and setting up three special defenses as follows: That her husband, co-defendant Sotomayor, had died leaving heirs who had not been summoned, wherefore the court had no jurisdiction over them; that the title of the plaintiff to the property in question was void, and that the defendant and her husband had a homestead right in the house built on the property.

The case was tried. It was proved that the spouses Sotomayor-Pizarro had created a mortgage on the property to secure the payment of a certain debt; that the mortgage was foreclosed and the property was sold at public auction to plaintiff Dávila; that as Dávila could not be given possession of the property in the foreclosure proceedings, he brought this action of unlawful detainer; that the defendant was in possession of the property and on it were also living children of Alvarado, some with their mother and others in a separate house; that the notice of sale of the mortgaged property had been published in *El Aguila de Puerto Rico* on the 30th of July and the 6th and 11th of August, 1924, the sale having taken place on the 12th of August, 1924. The demand for payment was made on the debtor spouses on the 10th of June, 1924. On the 16th of the said month of June, 1924, Sotomayor died. Several witnesses testified that the house wherein the defendant lived was built over thirty years before and that therein always lived the said spouses, there being children of said marriage, some of age and some under age, the defendant being the head of the family at present.

The court rendered judgment "ordering that within twenty days from the date on which this judgment becomes final defendant Gerónima Pizarro shall vacate and leave at the free disposal of the plaintiff the property subject of this litigation, to be described hereinafter, with the warning of ejectment if she should not comply herewith." The defendant thereupon took this appeal, assigning in her brief five

errors which she afterwards consolidated into three, as follows: Lack of jurisdiction of the court over Sotomayor and his heirs; inexistence of Dávila's title, and a right of homestead.

The first assignment is without merit. It is true that the complaint was entitled as against Sotomayor and his wife, but it is also true that the wife alone was summoned, when she was already a widow, her husband having died meantime. The wife entered appearance and defended. The judgment refers only to the widow. The name of Sotomayor should have been eliminated in order to avoid confusion, but the fact that it was not does not warrant a reversal of the judgment. As a matter of fact this is an action of unlawful detainer prosecuted solely against Gerónima Pizarro.

The second assignment is also without merit. The plaintiff proved that he had acquired the property by purchase at a forced sale. The sale was ordered and made in the foreclosure proceedings of a mortgage created on the said property. Such being the case, the defendant could not raise the question of nullity of title in an action of unlawful detainer, as has been held by this Supreme Court in the case of *León* v. *Alvarado*, 24 P.R.R. 654, as follows·

"The question of whether the plaintiff's title is void and prevents his exercising the rights originating therefrom can not be decided in a special summary proceeding, like that of unlawful detainer, in which only the right of the apparent owner and possessor to dispossess the tenant in possession is involved.

"The fact that the defendant in an action of unlawful detainer pleaded the nullity of the action in which the plaintiff acquired the property sued for in the action of unlawful detainer, is no ground for holding that the plaintiff has not a sufficient title to support a judgment in his favor; for until the said action and sale are annulled his title is good and he continues as the owner with the right to compel the defendant to vacate the property."

This is not a case of a title that appears on its face to

be void without adjudication in a proper action before a court having jurisdiction of such matters. All that the evidence revealed was an irregularity in the publication of the notice of sale, which did not affect the purchaser in good faith, in accordance with the jurisprudence of this Supreme Court. In the case of *Trueba* v. *Martínez*, 33 P.R.R. 446, 453, this court said:

"The alleged violation of section 251 of the Code of Civil Procedure in the manner of giving notice of the sale is a mere irregularity which does not affect a purchaser in good faith and can not be considered in a collateral action like this for the annulment of the judicial sale of the mortgaged property. *Henna et al.* v. *Saurí & Subirá*, 22 P.R.R. 776, and *Solá* v. *Castro et al.*, 32 P.R.R. 740."

■ The third error assigned raises a question that is new in this jurisdiction. On March 20, 1903, the Legislative Assembly of Porto Rico enacted an "Act to define Homestead and to exempt it from forced sale," and rarely have questions been raised in relation to that enactment. It seems that during so many years since its enactment the people do not yet realize that such law exists. Such has not been the case in the states and territories of the Union where statutes in identical, similar or different forms have long existed and where thousands of decisions have been rendered by the courts either interpreting the spirit and scope of them; or defining and settling the many complex problems raised by their application. Corpus Juris dedicates more than two hundred and fifty pages of its volume 29 to summing up the principles established by the jurisprudence. We quote from that volume as follows:

"By virtue of constitutional and statutory provisions the homestead in most states is exempted by law from liability for all debts of the owner, except such as are expressly excepted from the operation of these provisions. These provisions are not declaratory of the common law, although originally no real estate could be reached by execution for the payment of debts. Homestead laws, it has been said, are not founded upon equity, but are enacted as a matter

of public policy in the interest of humanity. The preservation of the homestead is considered of more importance than the payment of debts. The object of the provisions is to provide a home for each citizen of the government, where his family may be sheltered and live beyond the reach of financial misfortune, and to inculcate in individuals those feelings of independence which are essential to the maintenance of free institutions. Also the purpose of the homestead provisions is to protect the family as an entirety, and not the individual who for the time being is the head of the family. Furthermore, the state is concerned that the citizen shall not be divested of means of support and reduced to pauperism." 29 C. J. 782–3.

In Porto Rico the origin of this right is statutory. The six sections of which the law consists are as follows:

"Section 1.—That every householder, having a family, shall be entitled to an estate of homestead to the extent and value of five hundred dollars in a farm, plantation or lot of land, and buildings thereon, owned, or lawfully possessed, by lease or otherwise, and occupied by him or her, as a residence, and such homestead and all right and title therein, shall be exempt from attachment, judgment, levy or execution, except for the taxes due thereon or purchase price of said property, or liability incurred for the improvements placed thereon, and except as hereinafter prescribed: *Provided,* That in the case of a lease or other similar contract nothing herein contained shall be construed to prohibit the landlord or owner of the said farm, plantation or lot of land and the buildings thereon from reentering the said premises in accordance with the terms of the said lease and contract upon a breach of the conditions thereof.

"Sec. 2.—That such exemption shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continue to occupy such homestead, and after the death of both husband and wife, for the benefit of their children, until the youngest child shall become twenty-one years of age; in case the husband or wife shall desert his or her family the exemption shall continue in favor of the spouse occupying the premises as a residence; and in case of a divorce, the court granting the same, may, in the decree, dispose of the homestead estate according to the equities of the case.

"Sec. 3.—That no release, waver (waiver) or conveyance of an estate so exempted shall be valid unless so expressly provided in the instrument of conveyance by such householder his or her wife or

husband, if he or she have one, or unle'ss possession is obtained or given up pursuant to the conveyance, or without the orders of the district court directing the release thereof whenever the exemption is continued to a child or children.

"Sec. 4.—That no sale shall be made, under a judgment or execution of any such farm, plantation or lot of land and dwellings thereon, when the same is claimed or occupied as a homestead, unless a greater sum than five hundred dollars is obtained therefor. In case such farm, plantation or lot of land and buildings thereon, shall be sold for more than five hundred dollars the excess over said last mentioned sum shall be paid to the creditor and the sum of five hundred dollars shall be paid to the debtor, and shall be exempt from execution under a judgment or decree for the period of thirty days: *Provided,* That this section shall not apply to any sale made to enforce the payment of taxes due on said property, or a debt or liability incurred for the purchase of the same, or for the improvements thereon, or when said sale is made by virtue of any conveyance releasing or waiving such exemption as provided by section three of this act.

"Sec. 5.—That all laws, parts of laws, general orders and decrees in conflict with this act, are hereby repealed.

"Sec. 6.—That this act shall take effect from and after its approval." Comp. Revise'd Statutes and Codes of Porto Rico, pp. 213–14.

Let us examine now the peculiar facts of this particular case. We have already referred to the allegations of the complaint and to the evidence produced at the trial. It would seem pertinent now to transcribe the part of the prayer in the answer showing exactly how the defendant presents the question. It reads as follows:

". . . . and declaring also that the defendant has a homestead right in the said property, house and land included, up to the sum of five hundred dollars, and that an expert be appointed for the appraisal of said property, and if the value thereof should be greater than the homestead, a parcel of land, together with the said house, equivalent in value to the said $500.00, be allotted to the defendant, or, failing that, that the court order whatever measure it may deem consistent with the rules of equity and justice, with any other pronouncement that the law may call for."

In his brief the appellee says:

1. That the right of homestead is not a defense that can be admitted in an action of unlawful detainer;

2. That even if so, the facts in this case show that the right was waived when the mortgage was created;

3. That in Porto Rico, under the Mortgage Law, the homestead must be considered a property right in real property, and consequently should be recorded in the registry of property.

In order to maintain that the right of homestead can not be pleaded as a defense in an action of unlawful detainer the appellee cites solely the case of *Lazar* v. *Caston et al.*, of the Supreme Court of Mississippi, reported in 7 So. 321.

We have examined the authority cited and in our opinion it has not the scope attributed to it by the appellee. The opinion in the case is very short and all that it says with reference to the point is the following:

"The second instruction is erroneous in its assumption that the homestead exemption may be allotted in an action of ejectment. Homesteads are to be set apart by commissioners who view the premises, and not by a jury proceeding on evidence only."

It may be well to say here that although the case before this court is an action of unlawful detainer, it is no less true that the parties resorted to it unnecessarily. The conflict arose on giving possession of the property to the purchaser who bought it at the sale in the foreclosure proceedings prosecuted by Angel Martínez Caballero against the spouses Sotomayor-Pizarro. The order giving possession could and should have been issued in the foreclosure proceedings (*Viejo & Rodríguez* v. *Caloca, ante,* page 429), it being unnecessary for the purchaser to resort to an action of unlawful detainer for that purpose.

■ The real doubtful question is whether or not by the creation of the mortgage on the property by its owners, the

spouses Sotomayor-Pizarro, the homestead right now invoked by the widow was impliedly waived.

The appellee cites several cases in support of the affirmative and refers to 29 Corpus Juris, 954. The citations really sustain his proposition, but on page 955 of the same volume we find the following:

"But there can be no implied waiver where the statutes expressly prescribe the methods by which a debtor entitled to homestead can be divested of it."

And in Porto Rico the law, as we have seen, reads "That no release or conveyance of an estate so exempted shall be valid, *unless so expressly provided in the instrument of conveyance. . . .*" The italics are volunteered. And if the law requires that the waiver be expressly stated in a conveyance, it is clear that it should also be expressly stated in a mortgage.

The evidence shows also that the debt secured by the mortgage was incurred by the purchase of articles of commerce and fees, not as the purchase price or part of the purchase price of the mortgaged property, or as a debt incurred for improvements made thereon, which, with the taxes and the expressly made waivers, are the only exceptions recognized by the law.

█ Another fact to be considered is whether, as the defendant did not demand at the sale of the property that her homestead right be recognized, now that the property has been bought by some one else she can demand such recognition.

The record shows that the demand for payment was made upon the defendant husband in the mortgage foreclosure proceedings on the 10th of June, 1924, and that six days thereafter he died. The proceedings followed their course. There remained but the widow. And so the property was sold.

And the record also shows that the purchaser, although

he was not the mortgagee, knew perfectly well all of the facts. In testifying at the trial he said:

"The plaintiff, Lorenzo J. Dávila, substantially testified that he acquired the said property at a judicial sale in the suit of Angel Martínez against Antonio Sotomayor and his wife, Gerónima Pizarro; that the defendants have refused to surrender to him the possession of the same, for which reason he has been forced to sue in unlawful detainer. That he knew Antonio Sotomayor personally and knows his wife, Gerónima Pizarro, for many years; that he always knew them living in the property involved in this litigation, which is located in Río Canas Arriba of Juana Díaz, which property the witness knows because his father owns various estates contiguous to it in the same ward, and he had visited the place on several occasions."

In the light of these facts and the jurisprudence that will follow, we believe that the right of homestead can not be considered as impliedly waived because it was not invoked at the act of the sale.

"Failure of a debtor to object to a sale under execution of homestead premises does not operate as a waiver of a homestead where it is not necessary for the preservation of homestead rights that the debtor should make a specific claim of homestead before sale of the property." 29 C. J. 955.

"In applying the rules governing the rights of *bona fide* purchasers, or, perhaps, under the doctrine of estoppel, or both, it has been held that one who becomes a purchaser or mortgagee of homestead property, under circumstances giving him neither actual nor constructive notice of its homestead character, takes free from homestead claims. But purchasers and mortgagees are bound to make search for such facts as might reasonably be ascertained by them, and must take notice of the conditions that impress the homestead with the homestead character. Hence a purchaser or a mortgagee of homestead premises takes them encumbered with homestead rights known by him to have already attached. One who takes a mortgage of homestead property contrary to law acquires no rights under the instrument." 29 C. J. 917–18.

There remains to be considered only to what extent the Mortgage Law may be construed as requiring that the

right of homestead be established in a public instrument and recorded in the registry in order to affect a third person.

The appellee cites some California cases which in our opinion are not applicable, because in that state by the enactment of section 1264 of the Civil Code it was expressly provided that the homestead right should be set out in a public instrument and recorded.

The Porto Rican law is somewhat similar to the old California law which was afterwards amended, and to that of other states. It does not require that the homestead be constituted in any special form, and we do not believe that something which was not expressly required by the legislators can be supplied by the provisions of a former law.

Our Legislature, impelled by a spirit of liberality, wished to introduce here a new institution, and the courts should not restrict its will.

We rather consider applicable the following jurisprudence as summed up in Ruling Case Law:

"In a majority of the states occupancy of a place by a family is presumptive evidence of its appropriation as a homestead, and is notice to all the world of that fact, it being furthermore the rule that the purchase of a home with the intention to occupy it as a homestead, followed by actual occupancy within a reasonable time, impresses it, ab initio, with the homestead character and inviolability." 13 R.C.L. 588.

We understand that to require that the homestead right be shown in an instrument executed with all of the formalities provided by the Notarial Law and that it be recorded in the registry, according to the Mortgage Law, would be equivalent in the majority of cases, in fact in the most just ones, to the destruction of the purpose of the law.

In view of all that has been said we are of the opinion that as it appears from the pleadings and evidence that the spouses Sotomayor-Pizarro had long before constituted a homestead right in the property wherefrom it is now at-

tempted to eject the wife, the present head of the family, and her minor children living with her, the action of unlawful detainer can be sustained only provided that the homestead right be recognized, the judgment to be modified in that sense and as so modified affirmed.

Justices Aldrey and Franco Soto dissented.